**In re INSLAW, INC.**

**Division No. 89–2.**

United States Court of Appeals,
District of Columbia Circuit.

(Division for the Purpose of Appointing
Independent Counsels Ethics in
Government Act of 1978, as Amended).

Sept. 8, 1989.

Before MacKINNON, Presiding,
BUTZNER and PELL, Senior Circuit
Judges.

PER CURIAM:

The Special Division of the court has for consideration the request of INSLAW, Inc., (INSLAW), that the court appoint an independent counsel, under the Ethics in Government Act, 28 U.S.C. § 591 *et seq.*, to investigate alleged misconduct in a contract dispute with the Department of Justice involving the administration of a computer software contract. The court bases its ruling principally upon the written material submitted by the parties. The request is denied for the reason that the Attorney General has not applied to the Division of the court for the appointment of an independent counsel to investigate the matter as is required by the Act. Therefore, this court has no jurisdiction in the matter.

### I.

In February 1988, INSLAW supplied to the Public Integrity Section of the Department of Justice and to Independent Counsel James C. McKay, the same written factual allegations that it contends justifies the appointment of an independent counsel to conduct an investigation into certain allegations of federal offenses by high government officials covered by § 591(b).[1]   At

---

1. 28 U.S.C. § 591(b) provides:
   **(b) Persons to whom subsection (a) applies** The persons referred to in subsection (a) are—
   (1) the President and Vice President;
   (2) any individual serving in a position listed in section 5312 of title 5;

   (3) any individual working in the Executive Office of the President who is compensated at a rate of pay at or above level II of the Executive Schedule under section 5313 of title 5;
   (4) any Assistant Attorney General and any individual working in the Department of Jus-

that time, Mr. McKay was conducting an independent counsel investigation of Attorney General Edwin Meese III primarily into alleged violations of federal criminal law involving Wedtech Corporation and certain of its officers and directors.

■ The written allegations submitted by INSLAW broadly charged that the Department of Justice had committed certain violations of federal criminal law with respect to the administration of a contract for computer software to be supplied by IN-SLAW. The violations are alleged to go back as far as 1982 but there is only infrequent mention of the conduct of Attorney General Edwin Meese III and Associate Attorney General Arnold Burns, and none with respect to these officials that went back to 1982. Some of the conduct as far back as 1982 of D. Lowell Jensen, Deputy Attorney General, was referred to, but none within the past three years.[2] The material supplied by INSLAW did allege misconduct by numerous lower level employees of the Department of Justice. In fact, the allegations were generally aimed more directly at the Department of Justice than against any individual, much less the

former officials that INSLAW attempts to single out in this proceeding. The Department of Justice would not be a proper subject for investigation by an independent counsel.

Upon receiving the INSLAW material, and prior to receipt of a March 23, 1988 letter from the Deputy Independent Counsel, the Department of Justice had promptly conducted a thorough review of the allegations in conformance with the Independent Counsel Act, determined that they were insufficient to warrant a preliminary investigation under the standards of 28 U.S.C. § 591(d),[3] and accordingly closed the matter. Since the statute makes no provision for notice in such circumstances none was given. *Id.* The statute contemplates a two step investigatory procedure. First, as prescribed by § 591(d)(2), the Attorney General determines "whether grounds to investigate exist" and if not, he "shall close the matter." Second, if he finds that sufficient grounds do exist for further investigation, he "shall ... commence a preliminary investigation." *Id.* The Attorney General then determines whether to re-

tice who is compensated at a rate of pay at or above level III of the Executive Schedule under section 5314 of title 5;

(5) the Director of Central Intelligence, the Deputy Director of Central Intelligence, and the Commissioner of Internal Revenue;

(6) any individual who leaves any office or position described in any of paragraphs (1) through (5) of this subsection, during the incumbency of the President under whom such individual served in the office or position plus one year after such incumbency, but in no event longer than a period of three years after the individual leaves the office or position;

(7) any individual who held an office or position described in any of paragraphs (1) through (5) of this subsection during the incumbency of one President and who continued to hold the office or position for not more than 90 days into the term of the next President, during the 1-year period after the individual leaves the office or position; and

(8) the chairman and treasurer of the principal national campaign committee seeking the election or reelection of the President, and any officer of that committee exercising authority at the national level, during the incumbency of the President.

**2.** The material submitted by INSLAW has innumerable references to alleged misconduct by the

*"Department of Justice,"* while Meese, Burns and Jensen are only referred to sparingly. Much of the substance of the INSLAW complaint seems to precede the tenure of Meese and Burns in the Department of Justice. The court takes notice that Meese did not become Attorney General until February 23, 1985 and Burns did not enter the Department of Justice until January 6, 1986; while INSLAW's allegations complain of "Department of Justice" conduct as early as 1982 and thereafter. As for Jensen, he is not a proper subject for an independent counsel investigation since we take notice that he left his office in the Department of Justice more than three years ago, *i.e.,* prior to June 25, 1986 when he began serving as a United States District Judge in California. Thus he is not presently a person covered by the Independent Counsel Act. 28 U.S.C. § 591(b)(6).

**3.** 28 U.S.C. § 591(d)(2) provides:

(2) Time Period for Making Determination. —The Attorney General shall determine whether grounds to investigate exist not later than 15 days after the information is first received. If within that 15-day period the Attorney General determines that the information is not specific or is not from a credible source, then the Attorney General shall close the matter.

quest appointment of an independent counsel.

Independent Counsel McKay also reviewed the same INSLAW material, concluded it did not present a matter within his jurisdiction, and a subordinate in his office forwarded the material to a subordinate in the Public Integrity Section with an accompanying letter stating, *inter alia:*

> Accordingly, we are simply calling these matters to your attention for such action, if any, that your office may wish to take.

Letter of Deputy Independent Counsel, March 23, 1988 at 2.

Based on the foregoing facts, INSLAW contends that the Attorney General was required under the Act to conduct a preliminary investigation and since he failed to do so, and failed to notify the Division of the court that no further investigation was warranted, subsections 593(c)(2)(A) and (c)(2)(C)(ii)[4] now require the Division of the court either to expand the jurisdiction of the Independent Counsel to include the IN-SLAW complaints or to appoint another independent counsel to investigate such matters.

In sum, INSLAW contends that it submitted material to `Independent Counsel James C. McKay adequately supporting its claim for an expansion of his defined jurisdiction to investigate Edwin Meese III, *et al*, but Independent Counsel McKay determined the request exceeded his jurisdiction and that he then made a *formal § 593(c)(2) referral* of the matter to the Attorney General who allegedly failed to comply with his statutory responsibility to conduct a preliminary investigation. This alleged failure, it is contended, now requires the Special Division, pursuant to § 593 to appoint an independent counsel and define the jurisdiction for the investigation of the INSLAW matters. The defects in INSLAW's contentions are twofold: First, INSLAW does not have standing to obtain judicial review of the action by the Attorney General/Department of Justice. Second, the Independent Counsel never formally submitted the matter to the Attorney General/Department of Justice under § 593(c)(2).

## A. Standing of Private Citizens

■ Decisional law holds that petitioners in INSLAW's position lack standing to compel the Attorney General to conduct a preliminary investigation or to appoint an independent counsel to conduct an investigation. The Ninth Circuit in *Dellums v. Smith*, 797 F.2d 817, 822 (9th Cir.1986), ruled that, under the Independent Counsel Act, a private citizen lacks standing to institute a court challenge to the Attorney General's action refusing to conduct a preliminary investigation even where the allegations were conceded to be "specific and credible." The court reasoned that the lack of any provision for members of the public to petition the Attorney General compels the conclusion that there were persuasive reasons to believe that Congress intended to preclude review: "Because we conclude that Congress intended to preclude review at the behest of private citizens, we necessarily also conclude that Congress did not intend to create procedural rights in private citizens sufficient to support standing to sue." *Id.* at 823. *Accord Banzhaf v. Smith*, 737 F.2d 1167 (D.C.Cir.1984) (en banc); *Nathan v.*

---

**4.** 28 U.S.C. § 593(c)(2) provides:

(A) If the independent counsel discovers or receives information about possible violations of criminal law by persons as provided in § 591, which are not covered by the prosecutorial jurisdiction of the independent counsel, the independent counsel may submit such information to the Attorney General. The Attorney General shall then conduct a preliminary investigation of the information in accordance with the provisions of § 592, except that such preliminary investigation shall not exceed 30 days from the date such informa-

tion is received. In making the determinations required by § 592, the Attorney General shall give great weight to any recommendation of the independent counsel....

(C) If ... (ii) the 30 day period referred to in subparagraph (A) elapses without a notification to the division of the court that no further investigation is warranted, the division of the court shall expand the jurisdiction of the appropriate independent counsel to include the matters involved or shall appoint another independent counsel to investigate such matters.

*Smith,*[5] 737 F.2d 1069, 1077 (D.C.Cir.1984) ("[T]he Ethics in Government Act creates no private right of action to compel the Attorney General to conduct a preliminary investigation.") (Bork, J. concurring). *See also, In re Gallo,* Div. No. 89–1 (D.C.Cir. May 17, 1989) (holding in an Order that, because the Attorney General had not requested such appointment, the court lacked jurisdiction to appoint an independent counsel to investigate a private citizen's petition alleging that President Bush, (while Vice President and Director of the President's Task Force on Drugs), former Attorney General Meese, a United States Attorney, and others, conspired to violate his civil rights and commit other criminal acts.).

In reaching the foregoing interpretation of the Act, we note that the majority opinion by Chief Justice Rehnquist in *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), upholding the constitutionality of the Independent Counsel Act, gives as one ground for so concluding that the Act did not violate "the principle of separation of powers by unduly interfering with the role of the Executive Branch," because:

> [T]he courts are specifically prevented from reviewing the Attorney General's decision not to seek appointment, § 592(f).[6]

108 S.Ct. at 2621. This interpretation of the statute, *supra,* holds that there shall be no review of an Attorney General's decision *not to seek* an appointment.

**B. The Action by the Independent Counsel**

■ Moreover, Independent Counsel McKay did *not,* as provided for by § 593(c)(2), make a formal submission of the INSLAW matter to the Attorney General. The forwarding of the material by a subordinate in the Office of Independent Counsel to a subordinate in the Public Integrity Section, "for such action, *if any,*

that your office may wish to take," did not constitute, under the statute, a formal submission by the Independent Counsel to the Attorney General, or even to the Public Integrity Section. So finding, the court is without jurisdiction and dismisses INSLAW's request for that reason.

We reach this conclusion notwithstanding INSLAW's contention that the court is compelled to appoint an independent counsel to investigate allegations made against present and former Department of Justice officials pursuant to § 593(c)(2)(C)(ii).[7] Specifically, INSLAW asserts that the forwarding of materials, which INSLAW had submitted to the Independent Counsel, by the Office of Independent Counsel to the Department of Justice Public Integrity Section constituted a § 593(c)(2) submission. If such forwarding had been a formal submission as contemplated by § 593(c)(2), the Attorney General would have been required to give "great weight to any recommendation of the independent counsel" and to conduct a preliminary investigation under the Act; and failure to conduct such investigation within 30 days and give prompt notification to the Special Division, would have required "the division of the court to expand the jurisdiction of the appropriate independent counsel ... or to appoint another independent counsel to investigate such matters." § 593(c)(2)(C)(ii).

The Department of Justice contends that the Independent Counsel did not make a § 593(c)(2) submission and therefore the Section's mandatory preliminary investigation requirement referred to above was not triggered. We agree. In the March 23, 1988 letter to H. Marshall Jarrett, Deputy Chief, Public Integrity Section, Department of Justice, the Deputy Independent Counsel stated, after reviewing the INSLAW material, that the matter exceeded the Independent Counsel's jurisdiction and, as quoted above, he was "simply calling these mat-

---

5. The opinion in *Nathan, supra,* also establishes standards for determining when sufficient "specific information" is not submitted.

6. 28 U.S.C. § 592(f), the section of the statute referred to by the Chief Justice, provides:

> (f) The Attorney General's determination under this chapter to apply to the division of the court for the appointment of an independent counsel shall not be reviewable in any court.

7. *See, supra,* n. 3.

ters to your attention for such action, if any, that your office may wish to take." *Supra*, at 882. A letter from Associate Independent Counsel Friedman to Paul E. Atkinson, representing INSLAW, made a similar observation: "The INSLAW matter will not be pursued further by this office.... This simply is a case where we are not the appropriate agency to respond." Letter of Associate Independent Counsel, November 29, 1988. Had the Independent Counsel made a § 593(c)(2) submission, the Associate Independent Counsel would not have stated that the Office of Independent Counsel was not an *"appropriate agency."* *See also* Final Report of the Independent Counsel, *In re Meese*, Div. No. 87–1, at 12 ("After receiving and reviewing the IN-SLAW allegations, the independent counsel concluded that they did not fall within his mandate. Accordingly, the office of independent counsel declined to accept jurisdiction ... and referred it to the Department of Justice Public Integrity Section.").

When the Office of Independent Counsel stated that it was *"simply* calling these matters to [the Department's] attention for such action, *if any,* your office may wish to take," and asserting that "we are not the appropriate agency to respond," it clearly demonstrated that the action was not a formal § 593(c)(2) submission and hence did not activate the mandatory provisions of § 593(c)(2). Deputy Independent Counsel Letter at 2 (emphasis added) and Friedman letter of November 29, 1988.

The characterization of the letter as a "simpl[e]" informational step undercuts INSLAW's position that the action constituted a very significant formal procedure under the Act. *Id.* Had the Independent Counsel intended to make a formal § 593(c)(2) submission, he would have explicitly stated such intention, would have signed the submission himself and would have addressed it to the Attorney General. The applicable provision of § 593(c)(2) explicitly states that referrals under this Subsection should be "submit[ted] ... to the Attorney General." A letter from a subordinate to a subordinate in the respective offices is not a formal submission. Additionally, the fact that the Independent

Counsel's Office envisioned the Department not taking any action on INSLAW's allegations evidences the flaw in IN-SLAW's assertion; under a formal § 592(c)(2) submission, the Attorney General would be required to take some action *i.e.,* at the very least, conduct a preliminary investigation of the allegations within 30 days.

Having found that Independent Counsel McKay did not make a formal § 593(c)(2) submission, this court, for the reasons stated above, is without authority "to expand the jurisdiction of the appropriate independent counsel ... or to appoint another independent counsel to investigate [the IN-SLAW allegations]."

The petition requesting the Division of the court to appoint an independent counsel is therefore denied for lack of jurisdiction.

*Order accordingly.*