United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed March 18, 1999

 Division No. 94-1

 In re: Madison Guaranty Savings & 

 Loan Association
---------
 Division for the Purpose of 

 Appointing Independent Counsels 

 Ethics in Government Act of 1978, As Amended

---------

 Before: Sentelle, Presiding Judge, Fay and Cudahy, 
Senior Circuit Judges.

 O R D E R

 Upon consideration of Landmark Legal Foundation's Appli-
cation for Judicial Notice and Writ of Prohibition, filed with 
this Court on February 11, 1999, it is hereby

 ORDERED that the application be dismissed for the rea-
sons set forth in the accompanying opinion.
 Per Curiam
 For the Court:
 Mark J. Langer, Clerk
 by
 Marilyn R. Sargent
 Chief Deputy Clerk

 

 United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed March 18, 1999

 Division No. 94-1

 In re: Madison Guaranty Savings & Loan Association

 Division for the Purpose of 

 Appointing Independent Counsels 

 Ethics in Government Act of 1978, as Amended

---------

 Before: Sentelle, Presiding Judge, and Fay and Cudahy, 
Senior Circuit Judges.

 ON APPLICATION FOR JUDICIAL NOTICE 

 AND WRIT OF PROHIBITION

 Opinion of the Special Court filed Per Curiam.

 Per Curiam: Landmark Legal Foundation ("Landmark") 
has filed with this Court an "application" requesting that we 
take judicial notice of a recent newspaper article reporting 
that the United States Department of Justice ("DOJ") is to 
begin an investigation of the office of Independent Counsel 
("IC") Kenneth W. Starr, and that we issue a writ directing 
DOJ to cease its investigation. For reasons set forth below, 
we dismiss the application.


 DISCUSSION

 On August 5, 1994 this Court, pursuant to Section 593(f) of 
the Ethics in Government Act of 1978, as amended, 28 U.S.C. 
s 591 et seq. (1994) ("Act"), appointed Kenneth W. Starr as 
Independent Counsel to investigate, inter alia, President 
William Jefferson Clinton's relationship with certain business 
entities in the State of Arkansas. Thereafter, in early 1998, 
IC Starr received information that Monica Lewinsky, a for-
mer White House employee, was attempting to influence the 
testimony of a witness in a sexual harassment lawsuit brought 
against the President, and that Ms. Lewinsky herself was 
allegedly prepared to lie under oath in that lawsuit. Further, 
IC Starr was informed that Ms. Lewinsky had spoken to the 
President about her testimony. After testing the reliability 
of this information, IC Starr presented it to Attorney General 
Janet Reno, who requested that the Special Division, pursu-
ant to Section 593(c)(1) of the Act, expand Starr's jurisdiction 
to investigate the matter. Consequently, on January 16, 
1998, we expanded IC Starr's jurisdiction to investigate 
whether any federal laws were broken on the part of Ms. 
Lewinsky or others concerning testimony in the sexual 
harassment case. After investigating the matter, IC Starr, 
pursuant to Section 595(c) of the Act, submitted to the 
Congress "substantial and credible information that President 
William Jefferson Clinton committed acts that may constitute 
grounds for impeachment." Referral to the United States 
House of Representatives Pursuant to Title 28, United States 
Code, s 595(c), at 1, 5-6 (Sept. 9, 1998). Shortly thereafter, 
President Clinton was impeached by the House of Represen-
tatives and subsequently acquitted by the Senate.

 Subsequently, reports surfaced in the news media that the 
U.S. Department of Justice was to begin an investigation of 
alleged irregularities on the part of IC Starr and his staff 
concerning (1) the initial information regarding the Lewinsky 
matter presented to IC Starr, (2) his seeking of permission to 
investigate the information, and (3) his conduct during that 
investigation. Based upon these reports, Landmark, a self-
described "national public interest law firm," filed a motion 
with this Court requesting that we "take judicial notice of [a 


newspaper article on the Department of Justice investigation] 
and issue a Writ of Prohibition instructing the Attorney 
General to cease any investigation of Independent Counsel 
Kenneth Starr and his staff." Landmark Legal Foundation's 
Application for Judicial Notice and Writ of Prohibition at 1 
(Feb. 11, 1999) ("Landmark Motion").

 Upon receipt of Landmark's motion, we forwarded it to the 
Independent Counsel and the Department of Justice for their 
responses. Both the Department of Justice and the Indepen-
dent Counsel assert that we are without power to act on the 
Landmark petition, though on different rationales. Each 
defends the strength of its own rationale while omitting or 
rejecting the rationale of the other. Both are correct ratio-
nales. We have no jurisdiction.

 The courts of the United States are courts of limited 
jurisdiction, capable of acting only within those areas ceded to 
them by federal law pursuant to Article III of the United 
States Constitution. See, e.g., Allen v. Wright, 468 U.S. 737, 
750 (1984). Judicial precedent establishing the framework for 
determining whether a particular controversy is within the 
jurisdiction of the court has established several doctrines "by 
which we test the fitness of controversies for judicial resolu-
tion." Louisiana Environmental Action Network v. Brown-
er, 87 F.3d 1379, 1382 (D.C. Cir. 1996). In order to establish 
standing, an applicant for relief in a federal court must satisfy 
three minimum requirements: (1) that it has suffered a 
concrete and actual or imminent injury in fact; (2) that the 
injury was caused by the conduct complained of; and (3) that 
the injury will be redressed by a decision favorable to it. See 
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). 
With respect to element number (1), a party seeking to 
invoke the jurisdiction of the court must show that he has 
"suffered a distinct and palpable injury to himself." Glad-
stone, Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) 
(internal quotation marks and citation omitted). The filing of 
Landmark alleges no such injury. Although it describes 
itself as a "law firm," Landmark did not file its motion on 
behalf of any client, nor does it attempt to show that the firm 
itself has been injured. Indeed, Landmark states that it is 


presenting its motion "independently and in furtherance of its 
mission to advance the public interest in the fair administra-
tion of justice," and complains only that DOJ's conduct "seeks 
to frustrate, hamper and impede the independent counsel's 
investigation." Landmark Motion at 1 n.1, 4. We find 
nothing in Landmark's motion that could even remotely be 
considered an injury to itself. As Landmark wholly fails to 
carry its burden to satisfy element number (1), we need not 
address elements (2) and (3).

 Our conclusion that Landmark has no standing is sup-
ported and underscored by the fact that the Ethics in Govern-
ment Act, creating both the Office of Independent Counsel 
and this panel, provides no private cause of action. Although 
we have not had this question in precisely this context, this 
Court and others have in analogous situations consistently 
found no congressional intent to create such a cause and have 
therefore dismissed creative attempts to fashion one. For 
example, we have rejected applications from private citizens 
for appointment of an independent counsel. E.g., In re 
Visser, 968 F.2d 1319, 1324 (D.C. Cir., Spec. Div., 1992); In re 
Kaminski, 960 F.2d 1062, 1063-64 (D.C. Cir., Spec. Div., 
1992). Similarly, we have rejected a private citizen's applica-
tion to compel the Attorney General to conduct a preliminary 
investigation or to apply to the court for appointment of an 
Independent Counsel. In re INSLAW, Inc., 885 F.2d 880, 
882-84 (D.C. Cir., Spec. Div., 1989); see also Dellums v. 
Smith, 797 F.2d 817, 823 (9th Cir. 1986) ("Because ... Con-
gress intended to preclude review at the behest of private 
citizens, ... Congress did not intend to create procedural 
rights in private citizens sufficient to support standing to 
sue."); Nathan v. Smith, 737 F.2d 1069, 1080 (D.C. Cir. 1984) 
(Bork, J., concurring) ("[T]he Act establishes no mechanism 
for considering citizen complaints ... [T]he text contains 
nothing that even suggests a private cause of action.").

 Landmark attempts to circumvent the lack of a private 
cause of action and a concomitant failure of standing by 
asserting its motion under Federal Rules of Evidence 201, 
Judicial Notice of Adjudicative Facts, and 803, Hearsay Ex-
ceptions. This is a novel use of the rules, which we think was 


never conceived of by Congress or the courts. Rule 101, 
Scope, states that "[t]hese rules govern proceedings in the 
courts of the United States," i.e., proceedings already com-
menced. Here Landmark is, in effect, seeking to use the 
rules to initiate a proceeding. We know of no authority, and 
indeed perceive no logic, that would support the proposition 
that the Rules of Evidence create any cause of action or ever 
provide standing. We thus hold that the lack of standing as 
asserted by the Independent Counsel is a sufficient ground 
for the dismissal of Landmark's application.

 The Department of Justice, while agreeing with the Inde-
pendent Counsel that we have no authority to grant the relief 
Landmark prays, does not address the standing question. 
While we agree that the Justice Department's alternate 
ground for dismissal is equally valid, insofar as the Depart-
ment implies that standing is not a necessity before the panel 
because this is not a "judicial proceeding," we cannot accept 
its implication. Although Morrison v. Olson, 487 U.S. 654 
(1988), upheld as constitutional the exercise by this panel of a 
power arising from the Appointments Clause of Article II of 
the Constitution, U.S. Const., Art. II, s 2, we nonetheless are 
Article III judges. Indeed, it was the very fact that the 
limited duties imposed upon the Court by the statute did not 
run afoul of our Article III nature that led the Supreme 
Court to uphold the Ethics in Government Act as not violative 
of the principle of Separation of Powers. We therefore hold 
that citizens who would invoke the authority of the panel 
must meet the minimum constitutional requirements for in-
voking that jurisdiction, including standing. Landmark has 
not made that necessary showing.

 The Independent Counsel would have us stop there and not 
reach the independent ground asserted by the Department of 
Justice, which of course we could do since the single ground 
already determined is sufficient to dispose of the case. The 
Independent Counsel asserts that because Landmark lacks 
standing to bring its motion, we should leave other questions 
for another day. This is a valid proposition, and one that we 
would certainly follow were the asserted ground a ground 
addressing the merits of the controversy as opposed to our 


jurisdiction. However, although the Department's response 
discusses merits questions, narrowly viewed it raises a juris-
dictional question equally as much a threshold issue as that 
raised by the Independent Counsel. That is, the Department 
asserts that we have no jurisdiction because "the Special 
Division has no authority to take any action or undertake any 
duties that are not specifically authorized by the [Ethics in 
Government] Act." Morrison v. Olson, 487 U.S. at 684.

 While we need not discuss this second jurisdictional 
ground, having found the one asserted by the Independent 
Counsel to be sufficient, unlike a merits argument, we are 
free to do so. As the Supreme Court has noted, it is not 
proper for federal courts to proceed immediately to a merits 
question despite jurisdictional objections. Steel Co. v. Citi-
zens for a Better Environment, -- U.S. --, 118 S. Ct. 1003, 
1012 (1998) (without proper jurisdiction, a court cannot pro-
ceed at all, but can only note the jurisdictional defect and 
dismiss the suit). But there is no hierarchy of jurisdictional 
questions, so that "we have no difficulty dismissing a case on 
one jurisdictional bar rather than another." Louisiana Envi-
ronmental Action Network v. Browner, 87 F.3d 1379, 1384 
(D.C. Cir. 1986). While this means that a court may choose 
which one of several jurisdictional deficiencies it wishes to 
rely upon in dismissing a case, absent some circumstance in 
which one ground is logically anterior to another, it also 
means that there is no bar to our asserting an alternate 
ground where both deficiencies are jurisdictional.

 As we noted above, federal courts being courts of limited 
jurisdiction, we cannot exercise authority over matters not 
ceded to us by federal law. As the Department of Justice 
reminds us, the source of law governing the Special Division 
is the Ethics in Government Act. That Act enumerates our 
limited powers. The enumeration does not include the relief 
prayed by Landmark in the present application. The Special 
Division has "no power to review ... any of the actions of the 
Attorney General with regard to the [independent] counsel." 
Morrison v. Olson, 487 U.S. at 683.


 CONCLUSION

 For the reasons set forth above, we hold that we lack 
jurisdiction to entertain the application of Landmark Legal 
Foundation. We therefore dismiss the application.